JUDGE SCHEINDLIN    09 CV 7278

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

NATIONAL IRANIAN TANKER COMPANY

                        Plaintiff,           09 CV

  -v-

                                         **VERIFIED COMPLAINT**

SOCIETE ANONYME MAROCAINE DE
L'INDUSTRIE DU RAFFINAGE S.A.
"SAMIR",

                        Defendant.
-------------------------------------------------------------------x

      Plaintiffs, NATIONAL IRANIAN TANKER COMPANY (hereinafter "NITC"),

by its attorneys, CHALOS & CO, P.C., as and for its Verified Complaint against

Defendant, SOCIETE ANONYME MAROCAINE DE L'INDUSTRIE DU

RAFFINAGE S.A. "SAMIR" (hereinafter "SAMIR"), alleges upon information and

belief as follows:

<u>JURISDICTION</u>

    1.     The Court has subject matter jurisdiction by virtue that the underlying

claim herein is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure and within the admiralty and maritime jurisdiction of

this Court under 28 U.S.C. § 1333.

<u>THE PARTIES</u>

    2.     At all times material hereto, Plaintiff, NITC, was and still is a foreign

business entity duly organized and existing pursuant to the laws of Iran.

    3.     At all times material hereto, Defendant, SAMIR, was and still is a foreign

business entity with a principal place of business at Route Coutiere De Mohammedia,

Mohammedia, Morocco.

## FACTS AND CLAIM

4.      On or about September 22, 2008, Plaintiff, NITC, as bareboat charterers of the M/T SIMA, and Defendant, SAMIR, as charterers, entered into a charter party agreement for a voyage from one (1) safe port Turkish Mediterranean to one (1) safe port Morocco. *A copy of the fixture recap is attached hereto as Exhibit "1".*

5.      This charter party is a maritime contract.

6.      Pursuant to the terms and conditions of the charter party agreement, the parties agreed that demurrage would be paid to NITC at the rate of USD 70,000 per day pro rata.

7.      The vessel incurred demurrage at the load port of Ceyhan, Turkey for 8.18 days as a result of the Defendant's breach of the charter party agreement.  Accordingly, the vessel incurred demurrage charges in the total amount of USD 565,624.92.  *A copy of the Plaintiff's laytime statement and supporting documentation reflecting the demurrage incurred is attached hereto as Exhibit "2".*

8.      Despite demands by NITC to Defendant SAMIR to pay for the demurrage charges in a timely manner, SAMIR, in breach of the terms of the September 22, 2008 charter party, has failed, neglected, and/or otherwise refused to pay NITC for such demurrage.

9.      Pursuant to the terms of the charter party agreement, all disputes arising there under are to be submitted to London arbitration with English law to apply.  Plaintiff NITC has or shortly will commence arbitration.

10.     This action is brought to obtain jurisdiction over Defendant and also to obtain security for Plaintiff's claims and in aid of the London arbitration.

11.     English law, including but not limited to Section 63 of the English Arbitration Act of 1996, provides that a prevailing party is entitled to interest, costs and legal fees.

12.     As best as can now be estimated, the Plaintiff NITC expects to recover the following amounts in arbitration from Defendant SAMIR:

| | | |
|---|---|---|
| A. | Principal claim: | *$ 565,624.92* |
| B. | Estimated interest on Principal claim: 3 years at 5.33%, compounded quarterly | *$ 141,245.81* |
| C. | Estimated Attorneys' fees | *$ 50,000.00* |
| D. | Estimated Arbitration costs Arbitration costs: | *$ 50,000.00* |
| | **Total Claim** | **$ 806,870.73** |

13.     Therefore, NITC's total claim for breach of the maritime contract against Defendant SAMIR is in the aggregate USD 806,870.73.

## BASIS FOR ATTACHMENT

14.     Defendant cannot be found within this district within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but Defendant is believed to have or will have during the pendency of this action, certain assets, accounts, freights, monies, charter hire, credits, effects, payment for bunkers, goods or services, bills of lading, cargo and the like belonging to, claimed by, or for the benefit of, the Defendant within this District held by various parties, as garnishees, including by not limited to electronic fund transfers.

15.     Defendant is engaged in international commerce, ships its products all over the world, and conducts business in U.S. Dollars.  Nearly all companies engaged in the international shipping industry transact business in U.S. Dollars and therefore regularly have assets in New York City.  U.S. Dollars are the *lingua franca* of international commerce.

14.     All international U.S. dollar transfers are processed by intermediary banks in the United States, mainly in New York City.  The Clearing House Interbank Payment System represents that it processes 95% of those transfers.

15.     Plaintiff believes that some of these assets of Defendant, to wit: accounts; bank accounts; monies; charter hire; credits; debts owed to the defendant; effects; payments for bunkers, cargo, goods or services; debts; unmatured debts; bills of lading; payments from the purchasers of cargoes; freight and/or hire payments to or from owners of vessels, or charterers, to, from, or for the benefit of, Defendant and/or Clearing House Interbank Payment System (CHIPS) credits or funds being transferred through intermediary banks, are located in this District in the possession of garnishees, including: ABN AMRO BANK, Bank of America, Bank of China, Bank of New York, Bank of Tokyo Mitsubishi UFJ Ltd., Barclay's Bank, BNP Paribas SA, Calyon, Calyon Financial, Inc., Citibank N/A, Credit Suisse Securities (USA) LLC, Deutsche Bank, HSBC (USA), JPMorgan Chase Bank, Mashreqbank, Societe Generale, Standard Chartered Bank, State Bank of India, UBS AG, U.S. Bank, Wachovia Bank, and Wells Fargo Bank.

WHEREFORE, Plaintiff prays:

A.     That process in due form of law issue against the Defendant, citing them to appear and answer under oath all, and singular, the matters alleged in the Verified Complaint;

B.     That since the Defendant cannot be found within the District, as set forth in the Declaration of George M. Chalos *(a copy of which is attached hereto as Exhibit "3")*, and pursuant to Rule B and Rule E of the Supplemental Rules of Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B and Rule E of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all of the Defendant's tangible or intangible property or any other funds held by any garnishees in the district which are due and owing, or other property of, or for the benefit of, the Defendant, up to the amount of **USD 806,870.73** to secure and satisfy the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B and Rule E answer the matters alleged in the Complaint;

C.     That Plaintiff may have such other, further and different relief as may be just and proper.

Dated: Oyster Bay, New York
       August 17, 2009

CHALOS & CO, P.C.
Attorneys for Plaintiffs
NATIONAL IRANIAN TANKER
COMPANY.

By:     _____
        George M. Chalos (GC-8693)
        123 South Street
        Oyster Bay, New York 11771
        Tel: (516) 714-4300
        Fax: (516) 750-9051
        Email: gmc@chaloslaw.com

EXHIBIT 1

Ins. & Claim Manager
direct ; 0098-21-22275144
Office ;0098-21-23803210
Mobile;0098-912-8149577
farahbod@nitc.co.ir <mailto:farahbod@nitc.co.ir>
ins@nitc.co.ir <mailto:ins@nitc.co.ir>
_____


-----Original Message-----
From: nigel.burt@stochart.com <mailto:nigel.burt@stochart.com>
[mailto:nigel.burt@stochart.com] On Behalf Of
tankers@stochart.com <mailto:tankers@stochart.com>
Sent: 22 September, 2008 7:10 PM
To: chartering@nitc.co.ir; ops@nitc.co.ir; commserv@nitc.co.ir;
sardashti@nitc.co.ir; pourmehran@nitc.co.ir; zahiri@nitc.co.ir
<mailto:zahiri@nitc.co.ir>
Cc: nitcrdam@worldonline.nl; capt.kazemi@nitcsthlm.net
<mailto:capt.kazemi@nitcsthlm.net>
Subject: Sima oo Semnan/Samir - C/P 22.09.08 - Final Recap


To :- NITC Teheran
attn:- Chartering Dept.
attn:- Ops/Crd
attn:- Comm.serv
Cc :- NITC Rotterdam
Cc :- NITC Stockholm
From:- Stockholm Chartering AB


M/T "Sima" oo "Semnan"/Samir - C/P 22.09.08


WE ARE PLEASED TO CONFIRM THE BELOW
SUBJECT STEM/SUPPLIERS/RECIEVERS/CMA
BY LATEST 1600 HRS LONDON 22 SEPTEMBER


CP DATE:


ACCOUNT: SAMIR


OWNERS: NATIONAL IRANIAN TANKER COMPANY


VESSELS:

SEMNAN

flag : malta
built : 2000
class : dnv
p and i club : uk p&i club
double/double : yes
sdwt : 149,999 mt
sdraft : 16.198 m
loa : 274 m
beam : 48 m
ktm : 49.8 m
bcm : 129 m
tpc : 116,8
grt : 81479
nrt : 50676
scnt : 76630
derricks : 2 x 15t, 2 x 5t
igs : yes
cow : yes
cbt-sbt : sbt
coiled/type : stainless steel/seam less
coated/type : coal tar epoxy
cls : yes
cubic capacity : 166,683.2 cum at 98pct excl slop tanks
slop tank cap : 3,196.8 cum at 98 pct
hm value is usd 80 million

LAST CARGO:KIRKUK CRUDE/CEPSA
2nD LAST: TBA
3RD LAST: TBA

TBOOK VESSEL IS APPROVED BY:-
BP/ERG/REPSOL/TOTAL

POSITION:

VESSEL LOADING AT CEYHAN - ETS 22 ND SEP
ETA BASIS ALGECIRAS 27/28 SEP - ETS 29/ 30 SEP
ETA BASIS CEYHAN 5-6 OCT WSNP

O/O

MT SIMA

CLASS : DNV
SUMMER DEADWEIGHT : 149,999 METRIC TONS
CORRESPONDING DRAFT : 15.836 MTRS IN SALT WATER
CARGO CAPACITY AT 98 PERCENT FULL : 173,754 CBM (EXCL SLOPS)
3,332 CBM (SLOPS)
CARGO HEATING : YES 66 DEG C

13

TANK COATINGS : MODIFIED EPOXY TOP AND
BOTTOM TANK ONLY, SLOPS
FULLY
SWL OF DERRICKS/CRANES : 2 X 20 TONNES
24 HOURS / 100 PSI : YES

CRUDE OIL WASHING : YES
INERT GAS SYSTEM : YES
PAPERS AND CERTIFICATES ON BOARD : YES
P AND I CLUB : UK P&I CLUB
HULL AND MACHINERY VALUE : USD 98,000,000

BUILT : 2008
FLAG : MALTA
IMO NUMBER : 9357353
LOA : 274.18 METRES
BEAM : 50.04 METRES
KEEL TO TOP OF MAST : 53.45 METRES
BOW TO CENTRE OF MANIFOLD : 135.93 METRES

POSITION:
VESSEL ETS DONGES 25THSEP - ETA BASIS CEYHAN 3-4 OCT WSNP

APPROVALS:
SHELL/CSSSA/IDEMITSU/BP/ERG

LAST CARGO: CAPE LOPEZ CRUDE / SHELL
2ND LAST:
3RD LAST:

OWNERS TO DELCARE PERFORMING VESSEL BY LATEST 1200 HRS LONDON
29 SEPTEMBER.


FOR

P/C MIN 135,000 MT CHARTERERS OPTION TO COMPLETE UPTO FULL
CARGO . NO DEADFREIGHT FOR CHARTERERS ACCOUNT PROVIDED
MINIMUM QUANTITY SUPPLIED MAX 2 GRADES WVNS - NO HEAT CRUDE
OIL

LOAD : 1 SAFE PORT TURKISH MED - INTENTION CEYHAN

DISCHARGE : 1 SAFE PORT MOROCCO - INTENTION MOHAMMEDIA

LAYCAN : 6TH OCTOBER CANCELLING 0001-2359 2008

RATE : WS 174 (WS 2008 TO APPLY)

DEMURRAGE : USD 70.000 PDPR

ASBATANKVOY CP
---------------

WITH FOLLOWING ALTERATIONS TO SAMIR TERMS J1-J23 UPDATED
15/04/2002

J1 WORLDSCALE OK

J2 ELIBILITY 1ST PARAGRAPH ADD
AT BEGINNING; "TO THE BEST OF OWNERS' KNOWLEDGE" 2ND
PARAGRAPH AFTER "FAILURE" INSERT; "TO EXERCISE DUE
DILIGENCE"
J3 VOYAGE ORDERS 1ST LINE AFTER "GIVEN" INSERT;
"WITHIN REASONABLE TIME" 4TH LINE AFTER "DEMURRAGE" DELETE;
"AND ANY EXPENSES ARISING THEREFROM SHALL BE FOR OWNERS'
ACCOUNT."
J4 NOTICE OF READINESS
ADD AFTER MAIN PARAGRAPH :
"NOTWITHSTANDING ANYTHING ELSEWHERE HEREIN CONTAINED, IF THE
VESSEL COMPLETES LOADING PRIOR TO COMMENCEMENT OF ORIGINAL
LAYDAYS, NO TIME SHALL BE ADDED TO THE TOTAL ALLOWED LAYTIME
FOR THE TIME AFTER SUCH COMPLETION OF LOADING."
LAST PARGRAPH :
DELETE '08.00 AND 12.00' INSERT '07.00 AND 14H00'
J5 CLEAN BALLAST OK
J6 CANCELLING DELETE
AND INSERT INSTEAD; "PRINTED CLAUSE 5. LINE 2 - AFTER " . .
. CHARTERER'S SANCTION." DELETE BALANCE OF CLAUSE. INSERT
INSTEAD FOLLOWING INTERPELLATION WORDING; "SHOULD THE VESSEL
NOT BE READY TO LOAD BY 24.00 HOURS (LOCAL TIME) ON THE
CANCELLING DATE STIPULATED IN PART I, CHARTERER'S HAVE THE
OPTION OF CANCELLING THIS CONTRACT. IF IT APPEARS THAT THE
VESSEL WILL BE DELAYED BEYOND SUCH CANCELLING DATE, THE
OWNERS MAY AS SOON AS THEY ARE IN A POSITION TO STATE WITH
REASONABLE CERTAINTY THE DAY WITHIN WHICH THE VESSEL WILL BE
READY AS ABOVE, GIVE NOTICE THEREOF TO THE CHARTERERS ASKING
WHETHER THEY WILL EXERCISE THEIR OPTION OF CANCELLING. SUCH
OPTION MUST BE DECLARED WITHIN 72 RUNNING HOURS AFTER
RECEIPT OF THE OWNERS' NOTICE. IF THE CHARTERER'S DO NOT
THEN EXERCISE THEIR OPTION OF CANCELLING , UNLESS OTHERWISE
AGREED 72 RUNNING WORKING HOURS AFTER NOTIFICATION THEN THE
DATE STATED IN THE OWNERS' NOTICE SHALL BE REGARDED
AS A NEW CANCELLING DATE UNDER THIS CLAUSE."
J7 EXCESS QUANTITY 1ST PARAGRAPH 1ST LINE AFTER
"WHATSOEVER" INSERT; "UNLESS SHORE-STOP PROCEDURE IS
APPLIED" 2ND PARAGRAPH AFTER "SO CAUSED" INSERT; "DUE TO
VESSEL'S FAILURE TO EXERCISE DUE DILIGENCE" DELETE "ANY
EXPENSES CAUSED THEREBY SHALL BE FOR OWNERS ACCOUNT."
J8 FREIGHT
(C) (I) 3RD LINE DELETE "10" INSERT "5"

4TH LINE DELETE "AT LEAST 5 BANKING DAYS"
6TH LINE AFTER "WHICH IN THE OPINION OF THE SHIP'S
AGENT" INSERT; "AND OWNERS'"
INSERT AT THE END
'CHARTERERS WILL NOT BE REPONSIBLE FOR ANY DELAYS
DUE TO ABOVE .'
(C) (II) SECOND LINE - DELETE '10' INSERT '5' .
ADD AT END OF CLAUSE; "ORIGINAL CHARTER PARTY TO BE DRAWN UP
AND COURIERED DIRECT TO OWNERS' FOR SIGNATURE UPON LIFTING
OF SUBJECTS"

FREIGHT PAYMENT:

FOR MT SEMNAN;

FREIGHT/DEMURRAGE PAYABLE IN UNITED STATES DOLLARS BY TELEGRAPHIC
TRANSFER TO :-

ALL AMOUNTS DUE UNDER THIS C/P ARE PAYABLE AS PER TERMS
CONTAINED THEREIN AND PAYMENT SHALL BE EFFECTED BY SWIFT IN
USDOLLARS BY TELEGRAPHIC TRANSFER WITHOUT ANY CHARGES AND WITHOUT DISCOUNT
TO:

BANK NAME: MARFIN POPULAR BANK CO. LTD.
(LAIKI BANK)
INTERNATIONAL BUSINESS CENTRE (I.B.C.) - 178
ADDRESS: 1 CORNER VITSI AND ELLISPONTOU
CY-2015 STROVOLOS
P.O.BOX 22032
CY-1598 NICOSIA
CYPRUS
SWIFT ADDRES(BIC: LIKICY2N
ACCOUNT NO: 178-32-136721
IBAN NO: CY26 0030 0178 0000 0178 3213 6721
V.A.T. NUMBER: CY 101 61 506 S

U.S.CORRESPONDENT
BANK: USD BANK OF AMERICA NEW YORK CITY
BOFA US 3N MAIN 6550553510
BENEFICIARY NAME: ARASH SHIPPING ENTERPRISES LTD.
ADDRESS: DIAGORAS HOUSE
16 P. CATELARIS STREET
NICOSIA 1097
CYPRUS.
PHONE: +357 22660766
FAX: +357 22678777


FOR MT SIMA

all amounts due under this c/p are payable as per terms contained
therein
and payment shall be effected by swift in usdollars by telegraphic
transfer
without any charges and without discount to:


BENEFICIARY NAME : ARASH SHIPPING ENTERPRISES LIMITED
BENEFICIARY ADDRESS: DIAGORAS HOUSE, 16P. CATELARIS STREET,
CY 1097, NICOSIA, CYPRUS
BANK NAME : BNP PARIBAS (SUISSE) SA
BANK ADDRESS : PLACE DE HOLLANDE, 2 CH-1211 GENEVA 11,
SWITZERLAND
ACCOUNT NO. : 84724/1Z


SWIFT CODE : BPPBCHGG
IBAN NO. : CH90 0868 6001 0847 2400 1

CORRESPONDENT BANK
FOR USD TRANSFERS : BNP PARIBAS SA,NEW YORK, USA
SWIFT : BNPAUS3N



J9 PUMPING 1ST PARAGRAPH 1ST LINE AFTER
"FULL" INSERT; "HOMOGENEOUS" 2ND LINE DELETE "MINIMUM"
INSERT INSTEAD, "AVERAGE" 3RD LINE DELETE "10 BARS" INSERT
INSTEAD; "100 PSI EXCLUDING COW AND STRIPPING OPERATIONS"
2ND PARAGRAPH DELETE "MINIMUM" INSERT INSTEAD; "AVERAGE".
DELETE "10 BARS" INSERT INSTEAD; "100 PSI" 3RD PARAGRAPH
AFTER "FOLLOWING DOCUMENTATION" INSERT; "IF AVAILABLE"
J10 MOVING/SHIFTING 2ND LINE AFTER "OCCURS" DELETE "FIRST"
INSERT "LAST"
J11 INERT GAS SYSTEM AND CRUDE OIL WASHING OK
J12 LAYTIME DELETE "96" INSERT; "72"
J13 WEATHER CLAUSE 1ST LINE DELETE "OR DISCHARGE" ADD AT END;
"AT DISCHARGE PORT AND/OR LIGHTERAGE FULL TIME TO COUNT
WEATHER AND/OR SEA CONDITIONS PERMITTING OR NOT. TIME AND
EXPENSES FOR UNBERTHING/REBERTHING AND STANDBY TUGS TO BE
FOR CHARTERER'S ACCOUNT.
J14 TIME BAR DELETE "90" INSERT; "120"
J15 EXTRA INSURANCE ON CARGO DELETE
J16 DRUG AND ALCOHOL POLICY OK
J17 ADDITIONAL OIL POLLUTION A)
DELETE "500 MILLION" INSERT; "1 BILLION"
B) DELETE
J18 WAR RISK DELETE.
INSERT :
WITHOUT PREJUDICE TO ANY FURTHER NEGOTIATIONS
AND/OR CHARTERS OF THIS VESSEL AND/OR VESSELS UNDER SAME
MANAGEMENT/OWNERSHIP OWNERS SHALL PAY FOR WAR RISK NSURANCE

PREMIUM FOR ANNUAL PERIOD ON THE HULL AND MACHINERY VALUE.

ANY ADDITIONAL WAR RISK INSURANCE PREMIUM ON HULL AND MACHINERY OVER AND ABOVE ANNUAL PERIOD INSURANCE PREMIUM SHALL BE FOR CHARTERERS' ACCOUNT AND PAYABLE AGAINST PROVEN DOCUMENTATION FROM AN INTERNATIONALLY RECOGNISED UNDERWRITER.

THE PERIOD OF VOYAGE ADDITIONAL WAR RISKS PREMIUM SHALL COMMENCE WHEN THE VESSEL ENTERS A WAR RISK ZONE AS DESIGNATED BY THE LONDON INSURANCE MARKET AND CEASE WHEN THE VESSEL LEAVES SUCH ZONE. IF THE VESSEL IS ALREADY IN SUCH A ZONE THE PERIOD SHALL COMMENCE ON TENDERING NOR UNDER THIS CHARTER.

ANY DISCOUNT OR REBATE REFUNDED TO OWNERS FOR WHATEVER REASON SHALL BE PASSED ON TO CHARTERERS.

ANY PREMIUMS, AND INCREASE THERETO, ATTRIBUTABLE TO CLOSURE INSURANCE (I.E. BLOCKING AND TRAPPING) SHALL BE FOR OWNERS' ACCOUNT AS WELL AS CREW WAR BONUS.

H+M VALUE : USD 80.000.000 USD for MT SEMNAN
H+M VALUE : USD 98.000.000 USD for MT SIMA

WAR RISK ADDITIONNAL PREMIUM APPLIES ONLY ON WATERS WHERE THE SHIP WILL GO TROUGH DURING THIS VOYAGE .

J19 SAMIR INDEMNITY OK
J20 ARBITRATION/JURISDICTION AND INTERPRETATIONS ADD C) CLAIMS UNDER US$50,000 WILL BE DEALT WITH UNDER THE LMAA SMALL CLAIMS PROCEDURE.
J21 CARGO RETENTION 2ND LINE DELETE
"DEDUCT FROM FREIGHT" INSERT INSTEAD; "CLAIM FROM FREIGHT"
4TH LINE AFTER "DETERMINED" INSERT; "BY AN INDEPENDENT INSPECTOR"
J.22 EARLY LOADING ADD AFTER 2ND PARAGRAPH,
"NOTWITHSTANDING ANYTHING ELSEWHERE HEREIN CONTAINED, IF THE VESSEL COMPLETES LOADING PRIOR TO COMMENCEMENT OF ORIGINAL LAYDAYS, NO TIME SHALL BE ADDED TO THE TOTAL ALLOWED LAYTIME FOR THE TIME AFTER SUCH COMPLETION OF LOADING."
J23 ISM OK


ADDTIONNAL CLAUSES :
----------------------

* ANY TAXES AND OR DUES ON FREIGHT AND OR CARGO WHICH ARE NOT COVERED FOR BY WORLDSCALE TO BE FOR CHARTERER'S ACCOUNT.

* MAX 2 HOURS FOR OWNERS ACCOUNT AFTER DISCONNECTION OF HOSES

FOR DOCUMENTATION PURPOSES.

NO SET-OFF CLAUSE :
CHARTERER'S ACKNOWLEDGE AND CONFIRM THAT NITC AND NIOC
ARE SEPARATE LEGAL ENTITIES SUCH THAT NO CLAIMS AGAINST
NIOC OF WHATSOEVER NATURE MAY UNDER ANY CIRCUMSTANCES BE SET-
OFF AGAINST FREIGHT, DEMURRAGE OR ANY OTHER AMOUNT DUE UNDER
THIS CHARTER PARTY."

BIMCO ISPS CLS TO APPLY

(A) (I) FROM THE DATE OF COMING INTO FORCE OF THE INTERNATIONAL CODE FOR
THE SECURITY OF SHIPS AND OF PORT FACILITIES AND THE RELEVANT AMENDMENTS TO
CHAPTER XI OF SOLAS (ISPS CODE) IN RELATION TO THE VESSEL,
THE OWNERS SHALL PROCURE THAT BOTH THE VESSEL AND 'THE COMPANY' (AS DEFINED
BY THE ISPS CODE) SHALL COMPLY WITH THE REQUIREMENTS OF THE ISPS CODE
RELATING TO THE VESSEL AND 'THE COMPANY'. UPON REQUEST THE OWNERS
SHALL PROVIDE A COPY OF THE RELEVANT INTERNATIONAL SHIP SECURITY
CERTIFICATE (OR THE INTERIM INTERNATIONAL SHIP SECURITY CERTIFICATE) TO THE
CHARTERERS. THE OWNERS SHALL PROVIDE THE CHARTERERS WITH THE FULL STYLE
CONTACT DETAILS OF THE COMPANY SECURITY OFFICER (CSO).

(II) EXCEPT AS OTHERWISE PROVIDED IN THIS CHARTER PARTY, LOSS, DAMAGE,
EXPENSE OR DELAY, EXCLUDING CONSEQUENTIAL LOSS, CAUSED BY FAILURE ON THE
PART OF THE OWNERS OR 'THE COMPANY' TO COMPLY WITH THE REQUIREMENTS OF THE
ISPS CODE OR THIS CLAUSE SHALL BE FOR THE OWNERS' ACCOUNT.

(B) (I) THE CHARTERERS SHALL PROVIDE THE CSO AND THE SHIP SECURITY OFFICER
(SSO)/MASTER WITH THEIR FULL STYLE CONTACT DETAILS AND ANY OTHER
INFORMATION THE OWNERS REQUIRE TO COMPLY WITH THE ISPS CODE.

(II) EXCEPT AS OTHERWISE PROVIDED IN THIS CHARTER PARTY, LOSS, DAMAGE,
EXPENSE, EXCLUDING CONSEQUENTIAL LOSS, CAUSED BY FAILURE ON THE PART OF THE
CHARTERERS TO COMPLY WITH THIS CLAUSE SHALL BE FOR THE CHARTERERS'
ACCOUNT AND ANY DELAY CAUSED BY SUCH FAILURE SHALL BE COMPENSATED AT THE
DEMURRAGE RATE.

(C) PROVIDED THAT THE DELAY IS NOT CAUSED BY THE OWNERS' FAILURE TO COMPLY
WITH THEIR OBLIGATIONS UNDER THE ISPS CODE, THE FOLLOWING SHALL APPLY:

(I) NOTWITHSTANDING ANYTHING TO THE CONTRARY PROVIDED IN THIS CHARTER
PARTY, THE VESSEL SHALL BE ENTITLED TO TENDER NOTICE OF READINESS EVEN IF
NOT CLEARED DUE TO APPLICABLE SECURITY REGULATIONS OR MEASURES IMPOSED BY A
PORT FACILITY OR ANY RELEVANT AUTHORITY UNDER THE ISPS CODE.

(II) ANY DELAY RESULTING FROM MEASURES IMPOSED BY A PORT FACILITY OR BY ANY
RELEVANT AUTHORITY UNDER THE ISPS CODE SHALL COUNT AS LAYTIME OR TIME ON
DEMURRAGE IF THE VESSEL IS ON LAYTIME OR DEMURRAGE. IF THE DELAY OCCURS
BEFORE LAYTIME HAS STARTED OR AFTER LAYTIME OR TIME ON DEMURRAGE
HAS CEASED TO COUNT, IT SHALL BE COMPENSATED BY THE CHARTERERS AT THE
DEMURRAGE RATE.

(D) NOTWITHSTANDING ANYTHING TO THE CONTRARY PROVIDED IN THIS CHARTER PARTY, ANY ADDITIONAL COSTS OR EXPENSES WHATSOEVER SOLELY ARISING OUT OF OR RELATED TO SECURITY REGULATIONS OR MEASURES REQUIRED BY THE PORT FACILITY OR ANY RELEVANT AUTHORITY IN ACCORDANCE WITH THE ISPS CODE INCLUDING, BUT NOT LIMITED TO, SECURITY GUARDS, LAUNCH SERVICES, TUG ESCORTS, PORT SECURITY FEES OR TAXES AND INSPECTIONS, SHALL BE FOR THE CHARTERERS' ACCOUNT, UNLESS SUCH COSTS OR EXPENSES RESULT SOLELY FROM THE OWNERS' NEGLIGENCE. ALL MEASURES REQUIRED BY THE OWNERS TO COMPLY WITH THE SHIP SECURITY PLAN SHALL BE FOR THE OWNERS' ACCOUNT.

(E) IF EITHER PARTY MAKES ANY PAYMENT WHICH IS FOR THE OTHER PARTY'S ACCOUNT ACCORDING TO THIS CLAUSE, THE OTHER PARTY SHALL INDEMNIFY THE PAYING PARTY.

AGENCY: "THE VESSEL'S AGENTS AT NOMINATED PORT OF MOHAMMEDIA IS "ACACIA-MARITIME" SUCH AGENTS, ALTHOUGH NOMINATED BY CHARTERERS, SHALL BE EMPLOYED AND PAID BY OWNERS".


1,25 ADRESS COMMISION TO CHARTERERS ON FREIGHT/DEADFREIGHT AND DEMURRAGE


END RECAP


+ + + +


2.15 pct total commission as follows;

1.25 pct address commission
0.90 pct brokerage commission to Stockholm Chartering AB


Agents - Owners agent at loadport. Charterer's agent at discharge port.


Regards

Nigel Burt


————

This email has been scanned for all viruses by the Mimecast Email Security System.
For more information please visit http://www.mimecast.com
————

————

The information contained in this email message may be privileged and confidential.
If the reader is not the intended recipient, or the agent of the intended recipient,
any unauthorised use, disclosure, copying, distribution or dissemination is strictly
prohibited. If you have received this communication in error, please notify the sender
immediately by telephoning +44 20 7283 4646 and return this message to the above address.
Thank you.
For Company Registration Information please click <http://www.thomasmiller.com/companyinfo>
This email has been scanned for all viruses by the Mimecast Email Security System.
For more information visit <http://www.mimecast.com>

————

This email has been scanned for all viruses by the Mimecast Email Security System.
For more information please visit http://www.mimecast.com

————

From: Babak Rahimi (Operation Group 2) [b-rahimi@nitc.co.ir]
Sent: 18 June 2009 14:46
To: farahbod@nitc.co.ir
Cc: London6.ukclub@thomasmiller.com; seyedan@nitc.co.ir; sardashti@nitc.co.ir; 'zahiri'; Pourmehran@nitc.co.ir; bozorgmehr@nitc.co.ir; ins@nitc.co.ir
Subject: FW: Sima oo Semnan/Samir - C/P 22.09.08 - Final Recap


Dear Captain

Follwing recap sent to you as per qtd message which rcvd from Respectful NITC operation Manager captain Zahiri.


Brgds
Babak Rahimi
Operation Group 2

————

From: zahiri [mailto:zahiri@nitc.co.ir]
Sent: 18 June, 2009 5:05 PM
To: Pourmehran(Operation G/2); B-RAHIMI

Cc: OPS@nitc.co.ir; farahbod
Subject: Fw: Fw: TR: MT SIMA CEYHAN arrivage 1932 - urgent - - IXG/2008/202279

DEAR SIRS
===========
RE B/M, PLS FWD THE REQUESTED C/P CONTRACT.

WTH BST RGDS
E.ZAHIRI- OPS G.M.
D.TEL= +98-21-2380 3232/3233
D.FAX= +98-21-2227 51 53
MOBL= +98-912 1087 390
E-MAIL= ZAHIRI@NITC.CO.IR/
OPS@NITC.CO.IR
----- Original Message -----
From: farahbod
To: London6.ukclub@thomasmiller.com
Cc: seyedan@nitc.co.ir ; capt.sardashti ; zahiri@nitc.co.ir ; Pourmehran
( OPS/PRD ) ; bozorgmehr ; ins@nitc.co.ir
Sent: Thursday, June 18, 2009 3:36 PM
Subject: Re: Fw: TR: MT SIMA CEYHAN arrivage 1932 - urgent - - IXG/2008/202279

Dear Mr.Paul Knight ,

Many thanks for your prompt attention.

Dear Captain Zahiri RIC , Could you please submit a copy of the governing C/P for further proceedings.

Best Regards
Capt.Sh.Farahbod
Ins. & Claim Manager
direct ; 0098-21-22275144
Office ;0098-21-23803210
Mobile;0098-912-8149577
farahbod@nitc.co.ir
ins@nitc.co.ir
_____

-----Original Message-----
From: nigel.burt@stochart.com [mailto:nigel.burt@stochart.com] On Behalf Of
tankers@stochart.com
Sent: 22 September, 2008 7:10 PM
To: chartering@nitc.co.ir; ops@nitc.co.ir; commserv@nitc.co.ir;
sardashti@nitc.co.ir; pourmehran@nitc.co.ir; zahiri@nitc.co.ir
Cc: nitcrdam@worldonline.nl; capt.kazemi@nitcsthlm.net
Subject: Sima oo Semnan/Samir - C/P 22.09.08 - Final Recap

<u>SAMIR ADDITIONAL CLAUSES</u>

DATED APRIL 15TH, 2002

C/P ASBATANK
York/Antwerp Rules as amended 1994
Ownesrs guarantee vessel is and will remain a member of ITOPF
throughout the duration of the charter party.
Part II clause 9 : delete 'reachable on arrival'


## J 1 -<u>WORLDSCALE</u>

WORLDSCALE TERMS AND CONDITIONS SHALL APPLY TO THIS CHARTER PARTY.


## J 2 -<u>ELIGIBILITY</u>

THE VESSEL IS IN ALL RESPECTS ELIGIBLE AND NOT BLACKLISTED FOR ANY REASONS WHATSOEVER FOR TRADING TO THE PORTS AND PLACES SPECIFIED IN THE CHARTER PARTY AND THAT AT ALL NECESSARY TIMES SHE SHALL HAVE ON BOARD ALL CERTIFICATES, RECORDS AND OTHER DOCUMENTS REQUIRED FOR SUCH SERVICE.

ANY DELAYS INCURRED BECAUSE OF THE VESSEL'S FAILURE TO COMPLY WITH THE ABOVE SHALL NOT COUNT AS USED LAYTIME OR AS TIME ON DEMURRAGE.


## J 3 -<u>VOYAGE ORDERS</u>

THE VOYAGE ORDERS GIVEN TO THE OWNERS VIA THE BROKERS SHALL FORM PART OF THE CHARTER PARTY.

SHOULD THE OWNERS AND/OR MASTER FAIL IN ANY RESPECT TO OBSERVE THEM, ANY DELAYS SO CAUSED
SHALL NOT COUNT AS LAYTIME NOR DEMURRAGE AND ANY EXPENSES ARISING THEREFROM SHALL BE FOR
OWNER'S ACCOUNT. THE VOYAGE ORDERS SHALL NOT BE CONTRADICTORY TO THE CHARTER PART TERMS.


## J 4 - NOTICE READINESS

NOTICE SHALL NOT BE TENDERED BEFORE COMMENCEMENT OF LAYDAYS AND NOTICE TENDERED BY RADIO SHALL QUALIFY AS WRITTEN NOTICE PROVIDED IT IS CONFIRMED IN WRITING AS SOON AS REASONABLY POSSIBLE. NOTWITHSTANDING ANYTHING ELSE IN THIS CLAUSE, IF CHARTERERS START LOADING THE VESSEL BEFORE TIME
WOULD OTHERWISE START TO RUN UNDER THIS CHARTER, TIME SHALL RUN FROM COMMENCEMENT OF SUCH
LOADING OR DISCHARGING.

AT THE DISCHARGE PORT THE NOTICE OF READINESS SHALL BE GIVEN ONLY BETWEEN THE HOURS OF 08.00
AND 12.00 LOCAL TIME.


## J 5 - CLEAN BALLAST CLAUSE

VESSEL TO ARRIVE AT LOADING PORT(S) WITH CLEAN BALLAST, WHERE SHORE RECEIVING FACILITIES FOR
DIRTY BALLAST ARE PROVIDED, ANY FEES AND/OR COSTS FOR THE DISCHARGE OF BALLAST ASHORE TO BE
FOR OWNERS' ACCOUNT.


## J 6 - CANCELLING

CLAUSE 5 ADD:

"SHOULD THE VESSEL ARRIVE AFTER THE CANCELLING DATE AND THE CHARTER PARTY NOT BE CANCELLED, THEN LAYTIME SHALL NOT COMMENCE UNTIL THE VESSEL HAS BEEN MOORED IN HER LOADING BERTH".


## J 7 - EXCESS QUANTITY

IN NO CIRCUMSTANCES WHASTSOEVER SHALL THE VESSEL LOAD A QUANTITY EXCEEDING THAT GIVEN IN
THE VOYAGE ORDERS UNLESS THE CHARTERERS HAVE AUTHORIZED IT BY TELEX TO THEIR BROKERS.

OTHERWISE, ANY DELAYS SO CAUSED SHALL NOT COUNT AS LAYTIME OR IF THE VESSEL IS ON DEMURRAGE,
AS DEMURRAGE. ANY EXPENSES CAUSED THEREBY SHALL BE FOR OWNERS'ACCOUNT.

ANY CARGO LOADED IN EXCESS OF THE QUANTITY AGREED AS PER CHARTER PARTY WILL BE PAID AT ONE
HALF OF THE AGREED RATE FOR THE VOYAGE ACTUALLY PERFORMED.


## J 8 - FREIGHT

CLAUSE 2 HEREBY IS MODIFIED AS FOLLOWS :

(A)     WORDS " ON THE INSPECTOR'S CERTIFICATE OF INSPECTION"ARE CANCELLED AND REPLACED BY " ON
THE BILL OF LADING".

(B)     THE LAST SENTENCE IS CANCELLED.

(C)     THERE IS TO BE ADDED TO THE LAST SENTENCE OF CLAUSE 2 THE FOLLOWING :

(I) "IT IS A CONDITION PRECEDENT OF THE FOREGOING THAT: AT LEAST ONE ORIGINAL OF THIS CHARTER PARTY DULY SIGNED AND ENGAGING THE RESPONSIBILITY OF THE OWNERS SHALL BE RECEIVED BY THE CHARTERERS A MINIMUM OF TEN BANKING DAYS BEFORE THE VESSEL'S ARRIVAL AT MOHAMMEDIA AND THAT SHIP'S AGENTS SHALL RECEIVE AT LEAST FIVE BANKING DAYS BEFORE THE VESSEL'S ARRIVAL AT MOHAMMEDIA CONFIRMATION FROM HIS BANK THAT HE HAS RECEIVED FROM OWNERS IN FOREIGN CURRENCY AN AMOUNT WHICH IN THE OPINION OF THE SHIP'S AGENT WILL COVER, TO THE SATISFACTION OF THE MOROCCAN EXCHANGE CONTROL, THE SHIP'S DISBURSEMENTS TO BE MADE.

IN THIS RESPECT, A "BANKING DAYS" SIGNIFIES A DAY ON WHICH THE BANKS IN CASABLANCA, LONDON AND NEW-YORK ARE OPEN FOR THE TRANSACTION OF NORMAL BANKING BUSINESS.

II) THE FREIGHT WILL BE REMITTED AFTER RECEPTION OF THE AGREEMENT OF THE MOROCCAN EXCHANGE CONTROL AND THE CENTRAL BANK. MAXIMUM TEN BANKING DAYS AFTER COMPLETION OF DISCHARGE.

III)    NO FREIGHT IS PAYABLE ON SLOPS


J 9 -<u>PUMPING</u>

OWNERS UNDERTAKE THAT THE VESSEL SHALL DISCHARGE A FULL CARGO, AS DEFINED HEREUNDER, WITHIN 24 HOURS FROM THE COMMENCEMENT OF PUMPING OR THAT THE VESSEL SHALL MAINTAIN A MINIMUM DISCHARGE PRESSURE OF 10 BARS AT THE VESSEL'S MANIFOLD THROUGHOUT THE PERIOD OF DISCHARGE PROVIDED THAT THE SHORE RECEIVING FACILITIES ARE CAPABLE OF ACCEPTING DISCHARGE OF THE CARGO WITHIN SUCH TIME OR AT SUCH PRESSURE.
ANY ADDITIONAL TIME USED OWING TO THE INABILITY OF THE VESSEL TO DISCHARGE THE CARGO WITHIN 24 HOURS OR TO

MAINTAIN A MINIMUM DISCHARGE PRESSURE OF 10 BARS AT THE VESSEL'S MANIFOLD THROUGHOUT THE DISCHARGE SHALL BE FOR OWNERS' ACCOUNT AND SHALL NOT COUNT AS LAYTIME OR, IF THE VESSEL IS ON DEMURRAGE, AS DEMURRAGE. IF THE SHORE RECEIVING TERMINAL FACILITIES ARE UNABLE TO ACCEPT DISCHARGE OF THE CARGO WITHIN THE AFOREMENTIONED TIME OR AT THE AFOREMENTIONED DISCHARGE PRESSURE THE MASTER SHALL PRESENT THE SHORE RECEIVING TERMINAL WITH A NOTE OF PROTEST FORTHWITH, AND IN ANY EVENT PRIOR TO THE VESSEL'S DEPARTURE FROM THE BERTH, AND SHALL USE ALL REASONABLE  ENDEAVOURS TO HAVE SUCH NOTE OF PROTEST COUNTERSIGNED ON BEHALF OF THE SHORE RECEIVING TERMINAL IN THE ABSENCE OF WHICH COUNTERSIGNATURE THE MASTER SHALL PRESENT A FURTHER NOTE OF PROTEST TO THE SHORE RECEIVING TERMINAL.

CHARTERERS WILL NOT CONSIDER ANY CLAIM BY OWNERS FOR ADDITIONAL TIME USED IN THE FOREGOING CIRCUMSTANCES IN THE ABSENCE OF THE PROVISION BY OWNERS OF THE FOLLOWING DOCUMENTATION :

A)    AN HOURLY PUMPING LOG, SIGNED BY A RESPONSIBLE OFFICER OF THE VESSEL, A TERMINAL REPRESENTATIVE AND CHARTERERS' REPRESENTATIVE, SHOWING THE PRESSURE MAINTAINED AT THE MANIFOLD THROUGHOUT DISCHARGE AND, IN THE ABSENCE OF A SIGNATURE FROM A TERMINAL OR CHARTERERS' REPRESENTATIVE, A NOTE OF PROTEST,

B)    COPIES OF ALL NOTES OF PROTEST ISSUED OR RECEIVED BY THE VESSEL IN RELATION TO THE DISCHARGE IN QUESTION, AND

C)    COPIES OF ANY OTHER DOCUMENTATION GENERATED BY THE VESSEL OR BY THE SHORE RECEIVING TERMINAL RELEVANT TO THE DISCHARGE IN QUESTION.

J 10 -<u>MOVING/SHIFTING</u> :

THE TIME CONSUMED IN MOVING/SHIFTING FROM ONE LOCATION TO ANOTHER SHALL START WHEN THE VESSEL PREPARES TO MOVE (I.E HOISTING OF ANCHORS OR PILOT ON BOARD, WHICHEVER OCCURS FIRST) AND END WHEN SHE IS ALL FAST IN HER BERTH, EXCEPT AS PROVIDED IN WORLDSCALE. IN NO EVENT SHALL SUCH TIME COUNT FOR LAYTIME OR IF THE VESSEL IS ON DEMURRAGE, FOR DEMURRAGE.

**J 11 -INERT GAS SYSTEM AND CRUDE OIL WASHING :**

OWNERS WARRANT THAT THE VESSEL IS EQUIPPED WITH INERT GAS AND CRUDE OIL WASHING SYSTEMS IN
FULL WORKING ORDER AND THAT THE OFFICERS AND CREW ARE FULLY EXPERIENCED IN THEIR USE AND
THAT SUITABLE PROCEDURES ARE FOLLOWED ON BOARD FOR THE OPERATION OF THESE SYSTEMS.

ANY TIME LOST DUE TO THE INCORRECT OPERATION OF EITHER OR BOTH OF THESE SYSTEMS SHALL NOT
COUNT AS LAYTIME OR IF THE VESSEL IS ON DEMURRAGE, AS DEMURRAGE.

A PERIOD OF 12 HOURS SHALL BE ALLOWED FOR CRUDE OIL WASHING AND ANY ADDITIONAL TIME TAKEN
THEREFORE SHALL NOT COUNT AS LAYTIME OR DEMURRAGE.

**J 12 - LAYTIME**

NINETY SIX (96) RUNNING HOURS SUNDAYS AND HOLIDAYS INCLUDED SHALL BE ALLOWED TO CHARTERERS
AS  LAYTIME FOR LOADING AND DISCHARGING THE VESSEL.

**J 13 -WEATHER CLAUSE**

ANY TIME LOST AT LOAD OR DISCHARGE PORT DUE TO SEA CONDITION OR BAD WEATHER TO COUNT AS 5O PCT OF LAYTIME OR 5O PCT OF DEMURRAGE, AND ANY  TIME AND EXPENSES  FOR  UNBERTHING/REBERTHING  TO  BE  FOR CHARTERERS ACCOUNT.

## J 14 -TIME BAR CLAUSE

CHARTERERS SHALL BE DISCHARGED AND RELEASED FROM ALL LIABILITY IN RESPECT OF ANY CLAIM FOR DEMURRAGE WHICH OWNERS MAY HAVE UNDER THIS CHARTER UNLESS A CLAIM IN WRITING HAS BEEN PRESENTED TO CHARTERERS TOGETHER    WITH    SUPPORTING    DOCUMENTATION SUBSTANTIATING EACH AND EVERY CONSTITUENT PART OF THE  CLAIM  WITHIN  90  DAYS  OF  THE  COMPLETION  OF DISCHARGE OF THE CARGO CARRIED HEREUNDER.

## J 15 -EXTRA INSURANCE ON CARGO (WHERE APPLICABLE)

ANY EXTRA INSURANCE PREMIA OR SURCHARGES PAYABLE ON THE CARGO BECAUSE OF THE AGE AND/OR
FLAG AND/OR CLASS OF THE VESSEL SHALL BE FOR OWNERS'ACCOUNT AND SHALL BE DEDUCTED FROM THE FREIGHT TO BE PAID.

THE CHARTERERS SHALL PROVIDE SUPPORTING DOCUMENTS IN DUE COURSE. IT IS TO BE NOTED THAT, FOR
THE PURPOSES OF CALCULATING THE VESSEL'S AGE, THE YEAR A VESSEL COMES OUT OF THE SHIPYARD IS
COUNTED  IN  MOROCCO  AS  YEAR  1  WHILE  YEAR  2 COMMENCES ON THE FOLLOWING JANUARY 1ST.

## J16 - DRUG AND ALCOHOL POLICY

OWNERS  WARRANT  THAT  THEY  ADHERE  TO  THE  OIL COMPANIES INTERNATIONAL MARINE FORUM (OCIMF)

GUIDELINES FOR THE CONTROL OF DRUGS AND ALCOHOL ON BOARD SHIP.

J 17 -<u>ADDITIONAL OIL POLLUTION CLAUSES</u>

OWNERS WARRANT THAT THEY HAVE AND WILL MAINTAIN THOROUGHOUT THE PERIOD OF THIS
CHARTER:

A -    THE STANDARD OIL POLLUTION INSURANCE COVER (CURRENTLY USD 500 MILLION) AVAILABLE FROM
THEIR P AND I CLUB, AND

B -    ANY ADDITIONAL OIL POLLUTION INSURANCE COVER (CURRENTLY USD 200 MILLION) WHICH BECOMES
AVAILABLE VIA THEIR P AND I CLUB OR THROUGH UNDERWRITERS PROVIDING FIRST CLASS SECURITY.

J 18 -<u>WAR RISK</u>

HULL AND MACHINERY WAR RISKS PREMIUMS WHICH ARE IN EFFECT ON THE DATE OF THIS CHARTER SHALL BE FOR OWNERS ACCOUNT FOR A PERIOD OF FIRST 7 DAYS ANY INCREASE IN PREMIUMS AND/OR ANY PERIOD IN EXCESS OF THE FIRST 7 DAYS SHALL BE FOR CHARTERER'S ACCOUNT AND PAYABLE AGAINST PROPER DOCUMENTATIONS. ANY DISCOUNT OR REBATE REFUNDED TO OWNERS FOR WHATEVER REASON SHALL BE PASSED ON TO THE CHARTERERS.

ANY PREMIUM OR INCREASE THERETO ATTRIBUTABLE TO CLOSURE INSURANCE (I.E BLOCKING AND TRAPPING) AS WELL AS WAR BONUS TO OFFICERS AND CREW SHALL ALWAYS BE FOR OWNERS' ACCOUNT.

- HULL AND MACHINERY VALUE :

- RATE OF HULL AND MACHINERY WAR RISKS PREMIUMS AS OF THE DATE OF THIS CHARTER :
- PERIOD OF FIRST 7  DAYS TO BE DETERMINED AS FOLLOWS :

- STARDING : --
- ENDING  : --

ANY ADDITIONAL COST RESULTING FROM LONGER STAY IN WAR RISK ZONE FOR OWNERS/VESSEL'S PURPOSE
(SUCH AS, BUT NOT LIMITED TO BUNKERING, REPAIRS, AWAITING OWNERS'ORDERS, CREW CHANGE) WILL BE
FOR OWNERS'ACCOUNT.


J 19 -SAMIR INDEMNITY CLAUSE – AMENDED -

OWNERS P AND I CLUB WORDING TO INSERT.


J 20. ARBITRATION / JURIDICTION AND INTERPRETATION

A -    THIS CHARTER PARTY SHALL BE CONSTRUED AND THE RELATIONS BETWEEN THE PARTIES SHALL BE
DETERMINED ACCORDING TO THE LAW OF ENGLAND.

B -    ANY DISPUTE BETWEEN THE PARTIES UNDER THIS CHARTER PARTY SHALL BE DECIDED BY THE
ENGLISH COURTS TO WHOSE JURIDICTION THE PARTIES HEREBY SUBMIT.


J 21.  CARGO RETENTION CLAUSE

IN THE EVENT THAT ANY CARGO REMAINS ON BOARD UPON COMPLETION OF DISCHARGE CHARTERERS SHALL HAVE THE RIGHT TO DEDUCT FROM FREIGHT AND AMOUNT EQUAL TO THE FOB PORT LOADING VALUE OF SUCH CARGO PLUS FREIGHT DUE WITH RESPECT THERETO, PROVIDED THAT THE VOLUME OF CARGO REMAINING ON BOARD IS FREE FLOWING,

PUMPABLE, LIQUID AND REACHABLE BY VESSEL'S PUMPS, AS DETERMINED AND ONE APPOINTED AND PAID FOR BY CHARTERERS. ANY ACTION OR LACK OF ACTION IN CONNECTION WITH THIS PROVISION SHALL BE WITHOUT PREJUDICE TO ANY RIGHTS OR OBLIGATIONS OF THE PARTIES.

## J 22.   <u>EARLY LOADING CLAUSE</u>

IN THE EVENT CHARTERER AGREES TO LOAD VESSEL PRIOR TO COMMENCEMENT OF LAYDAYS, ALL SUCH TIME  TO BE CREDITED AGAINST ANY TIME VESSEL IS ON DEMURRAGE. FOR PURPOSES OF THIS CLAUSE, TIME TO COUNT WHEN VESSEL IS ALL FAST AT THE LOADPORT.

## J 23.   <u>ISM CLAUSE</u>

THE REQUIREMENTS OF THE INTERNATIONAL SAFETY MANAGEMENT CODE ARE HEREBY INCORPORATED INTO THE TERMS OF THIS CHARTER PARTY. OWNERS WARRANT THAT ON AND AFTER THE 1ST JULY  1998, A SAFETY MANAGEMENT SYSTEM IN ACCORDANCE WITH THE ISM CODE WILL BE IN OPERATION. OWNERS FURTHER WARRANT THAT ON AFTER 1ST JULY 1998 THEY (OR THE COMPANY AS DEFINED BY THE ISM CODE) SHALL HAVE A VALID SAFETY MANAGEMENT CERTIFICATE. IN THE EVENT OF ANY DELAY TO THE VESSEL CAUSED BY NON COMPLIANCE WITH THE REQUIREMENTS OF THE ISM CODE , LAYTIME OR TIME ON DEMURRAGE SHALL NOT COUNT.

EXHIBIT 2

# N I T C



**National Iranian Tanker Co.**

IN THE NAME OF GOD

11.01.2009

3.3649

---

STOCKHOLM CHARTERING AB
KUNGSGATAN 17,
SE-111 43 STOCKHOLM
SWEDEN
ATTN.: Mr. NIGEL BURT
PHONE: 50 66 2000

SUBJECT : VESSEL SIMA/ SAMIR
CHARTER PARTY DATED 22/09/2008
================================

DEAR SIRS,

WITH REFERENCE TO OUR E-MAIL MESSAGE OF 08/01/2009

PLEASE ENCLOSED FIND OUR ORIGINAL DEBIT NOTE, LAYTIME STATEMENT

TOGETHER WITH SUPPORTING DOCUMENTS REFLECTING DEMURRAGE IN RESPECT

OF THE SUBJECT VESSEL AMOUNTING TO U.S.D 565.624.92

APPRECIATE ACKNOWLEDGING ON SAFE RECEIPT OF ENCLOSED BY RETURN

MESSAGE. ALSO PLEASE REVERT WITH CHARTERERS' REPLY AND PAYMENT DETAILS

AS SOON AS POSSIBLE.

YOURS FAITHFULLY,

S.H. SEYEDAN

COMMERCIAL DIRECTOR

---

**N I T C**



IN THE NAME OF GOD

## National Iranian Tanker Co.

```
INVOICE No: 7715      D E M U R R A G E   I N V O I C E    DATE: 08/01/2009
================      ================================    ================
REF: M/T SIMA        SAMIR                               C/P DATED 22/09/2008
1st LOAD PORT:CEYHAN ON 15/10/08+LAST DISCH. PORT:       MOHAMMEDIA ON 24/10/08
DEMURRAGE INCURRED AS PER ENCLOSURE:            USD    565,624.92
U.S. DOLLARS FIVE HUNDRED SIXTY FIVE THOUSAND SIX HUNDRED TW -
ENTY FOUR   AND NINETY TWO  CENTS
```

PAYABLE BY SWIFT TELEGRAPHIC TRANSFER TO:

    BENEFICIARY NAME     : ARASH SHIPPING ENTERPRISES LIMITED

    BENEFICIARY ADDRESS : DIAGORAS HOUSE
                            16 P. CATELARIS STREET
                            CY 1097 ,NICOSIA, CYPRUS

    BANK NAME           : BNP PARIBAS (SUISSE) SA

    BANK ADDRESS       : PLACE DE HOLLANDE, 2 CH-1211 GENEVA 11,
                            SWITZERLAND

    ACCOUNT NO.        : 84724/1Z

    SWIFT               : BPPBCHGG

    IBAN                : CH90 0868 6001 0847 2400 2

    U.S. CORRESPONDENT BANK : BNP PARIBAS SA, NEW YORK,U.S.A.

    SWIFT               : BNPAUS3N

REGARDS

S.H. SEYEDAN
COMMERCIAL DIRECTOR

# N I T C



**National Iranian Tanker Co.**

IN THE NAME OF GOD

PAGE   2

M/T  SIMA                    SAMIR                    C/P DATED 22/09/2008

A-1) FIRST LOAD PORT: CEYHAN
     ------------------

|                          |            |        |              |
|--------------------------|------------|--------|--------------|
| N.O.R TENDERED           | 06/10/08   | 00-01  |              |
| LAYTIME COMMENCED        | 06/10/08   | 06-01  |              |
| BERTHED                  | 14/10/08   | 16-48  |              |
| HOSES DISCONNECTED       | 15/10/08   | 15-36  |              |
| LAYTIME ENDED            | 15/10/08   | 18-40  |              |
| GROSS TIME USED          |            | 228-39 |              |

LESS DEDUCTION:
  - SHIFTING
  FM   14/10/08        14-48

  TO   14/10/08        16-48                 (-) 02-00

  - BAD WEATHER (50/50)
  FM   15/10/08        03-30

  TO   15/10/08        04-24                 (-) 00-27

  - SHORE BREAKDOWN (50/50)
  FM   15/10/08        06-00

  TO   15/10/08        06-12                 (-) 00-06

  - SHORE BREAKDOWN (50/50)
  FM   15/10/08        07-10

  TO   15/10/08        07-30                 (-) 00-10

  - SHORE BREAKDOWN (50/50)
  FM   15/10/08        09-00

  TO   15/10/08        09-42                 (-) 00-21

  DOCUMENTS ON BOARD ALLOWANCE:             (-) 02-00

  NET TIME USED AT FIRST LOAD PORT:             223-35

# NITC



IN THE NAME OF GOD

**National Iranian Tanker Co.**

PAGE   4

M/T  SIMA                          SAMIR                          C/P DATED 22/09/2008

B-1) FIRST DISCH. PORT:  MOHAMMEDIA
     ------------

    N.O.R TENDERED                          22/10/08   07-00

    LAYTIME COMMENCED                       22/10/08   13-00

    BERTHED                                 23/10/08   16-00

    HOSES CONNECTED

    HOSES DISCONNECTED                      24/10/08   20-18

    LAYTIME ENDED                           24/10/08   20-18

    GROSS TIME USED                                    55-18


LESS DEDUCTION:
    - SHIFTING
    FM   23/10/08        12-30

    TO   23/10/08        16-00               (-) 03-30

    - AWAITING DAYLIGHT
    FM   23/10/08        00-00

    TO   23/10/08        07-00               (-) 07-00

    NET TIME USED AT FIRST DISCH. PORT:           44-48




    NET TIME USED AT FIRST DISCH. PORT            44-48

# N I T C



IN THE NAME OF GOD

## National Iranian Tanker Co.

PAGE   5

M/T  SIMA                    SAMIR                C/P DATED 22/09/2008

TOTAL NET TIME USED AT LOAD & DISCH. PORTS:  268-23

LESS AGREED TIME:                      72-00

DEMURRAGE TIME                         196-23

OR                             08D/04H/23M

DEMURRAGE = 8.182639 DAYSx US$  70,000.00= US$   572,784.73

LESS ADDRESS COMMISSION FEES    1.25 % US$   7,159.81

TOTAL DEMURRAGE PAYABLE:            US$      565,624.92
                                  =============
                                   E + OE

EXHIBIT 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
NATIONAL IRANIAN TANKER COMPANY

                                    Plaintiff,          09 CV

-v-

SOCIETE ANONYME MAROCAINE DE              **ATTORNEY'S DECLARATION**
L'INDUSTRIE DU RAFFINAGE S.A.             **THAT DEFENDANT CANNOT BE**
"SAMIR",                                  **FOUND IN THE DISTRICT**

                                    Defendant.
-------------------------------------------------------------------x

This declaration is executed by **George M. Chalos, Esq.**, counsel for the Plaintiff,

NATIONAL IRANIAN TANKER COMPANY, in order to secure the issuance of a Summons

and Process of Maritime Attachment and Garnishment in the above-entitled, in personam,

Admiralty cause.

Pursuant to 28 U.S.C. §1746, **George M. Chalos, Esq.**, declares under the penalty of

perjury:

I am a Member of the firm of CHALOS & CO, P.C., attorneys for Plaintiff in the above

referenced matter.

I am familiar with the circumstances of the Verified Complaint, and I submit this

declaration in support of Plaintiff's request for the issuance of Process of Maritime Attachment

and Garnishment of the property of the defendant, SOCIETE ANONYME MAROCAINE DE L'

INDUSTRIE DU RAFFINAGE S.A. "SAMIR", pursuant to Rule B of the Supplemental Rules

for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

I have personally inquired or have directed inquiries into the presence of the defendant in

this District.

I have personally checked with the office of the Secretary of State of the State of New

York, using the Secretary of State's Division of Corporations database, and I have determined

that, as of August 18, 2009, the defendant is not incorporated pursuant to the laws of New York, and have not nominated any agent for the service of process within the Southern District of New York.

I have inquired of Verizon Telephone Company whether the defendant can be located within this District.  The Verizon Telephone Company has advised me that the defendant does not have any telephone number listings within this District.

I have further consulted with several other telephone directories on the internet, and I have found no separate telephone listings or addresses for the defendant within this District.

I have engaged in a Google search as to whether the defendant can be located within this District.  The Google search results did not provide any information that defendant is found in this District.

I am unaware of any general or managing agent(s) within this District for the defendant.

In that I have been able to determine that the defendant has not appointed an agent for service of process within the Southern District of New York and that I have found no indication that the defendant can be found within this District for the purposes of Rule B, I have formed a good faith belief that the defendant does not have sufficient contacts or business activities within this District and does not have any offices or agents within this District to defeat maritime attachment under Rule B of the Supplemental Rules for Admiralty and Maritime Claims as set forth in the Federal Rules of Civil Procedure.

It is my belief, based upon my own investigation that the defendant, SOCIETE ANONYME MAROCAINE DE L' INDUSTRIE DU RAFFINAGE S.A. "SAMIR",  cannot be found within this District for the purposes of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

Dated: Oyster Bay, New York
      August 18, 2009

                    CHALOS & CO, P.C.
                    Attorneys for Plaintiff
                    NATIONAL IRANIAN TANKER COMPANY

By:      _____

                    George M. Chalos (GC-8693)
                    123 South Street
                    Oyster Bay, New York 11771
                    Tel: (516) 714-4300
                    Fax: (866) 702-4577
                    Email: gmc@chaloslaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
NATIONAL IRANIAN TANKER COMPANY
                                        Plaintiff,                    09 CV

-v-
                                                                      **VERIFICATION OF**
                                                                      **COMPLAINT**
SOCIETE ANONYME MAROCAINE DE
L'INDUSTRIE DU RAFFINAGE S.A. "SAMIR",
                                        Defendant.
-----------------------------------------------------------------x

      Pursuant to 28 U.S.C. §1746, GEORGE M. CHALOS, Esq., declares under the penalty of perjury:

      1.     I am a Member of the law firm of CHALOS & CO, P.C., counsel for the

Plaintiff, NATIONAL IRANIAN TANKER COMPANY, herein;

      2.     I have read the foregoing Verified Complaint and know the contents thereof; and

      3.     I believe the matters to be true based on documents and information obtained

from employees and representatives of the Plaintiff through its agents, underwriters and attorneys.

      4.     The reason that this verification was made by deponent and not by the Plaintiff is

because Plaintiff is a foreign corporation, whose officers are not in this district, and whose

verification cannot be obtained within the time constraints presented by the circumstances of this

case.

      I declare under penalty of perjury that the foregoing is true and correct.

Dated:  Oyster Bay, New York
        August 18, 2009

                         CHALOS & CO, P.C.
                         Attorneys for Plaintiff
                         NATIONAL IRANIAN TANKER COMPANY

           By:   _____
                         George M. Chalos (GC-8693)
                         123 South Street
                         Oyster Bay, New York 11771
                         Tel: (516) 714-4300
                         Fax: (866) 702-4577
                         Email: gmc@chaloslaw.com